**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NEW REFLECTIONS PLASTIC SURGERY, LLC | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 3:16-cv-08523-FLW-TJB |
| REFLECTIONS CENTER FOR SKIN AND BODY, PC, | § § § | JURY TRIAL DEMANDED |
| Defendant. | § | |

<u>**NEW REFLECTIONS PLASTIC SURGERY, LLC'S MOTION FOR SUMMARY JUDGMENT**</u>

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION .............................................................................................1

II.    SUMMARY JUDGMENT STANDARD .......................................................2

III.   ARGUMENT.....................................................................................................3

      a.   The Undisputed Facts Bar Defendant's Trademark Infringement and Lanham Act Claims Because the REFLECTIONS Mark Is Invalid .................................................3

            i.   Defendant's registration of the REFLECTIONS mark is invalid based on the likelihood of confusion with already-existing trademarks. ....................................3

            ii.   Defendant's registration of the REFLECTIONS mark is invalid based on nonuse. .....................................................................................6

            iii.   Defendant's registration of the REFLECTIONS mark is invalid because Defendant made false statements as to the use of the mark in its procurement of registration. ................................................................................9

      b.   The Undisputed Facts Bar Defendant's Trademark Infringement and Lanham Act Claims Based on Laches .................................................10

            i.   Defendant's delay in asserting its alleged trademark rights was unexplainable and inexcusable. ................................................................................10

            ii.   Defendant's delay was prejudicial to Plaintiff. ....................................................12

IV.    CONCLUSION ...............................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .....................................2, 3

*Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.,* 696 F. Supp. 140 (D.N.J. 1988) ..........................4

*Bongrain Int'l Corp. v. Delice de France, Inc.,* 811 F.2d 1479 (Fed. Cir. 1987)..........................7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ................................................2, 3, 6, 8

*Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531 (2d Cir. 1964) ...............12

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 995 F. Supp. 490 (D.N.J. 1998) .......................................................................10, 11, 12, 13, 14

*Fox v. Millman,* 210 N.J. 401, 417 (2012) ...........................................................10, 12

*Gen. Car & Truck Leasing Sys., Inc. v. Gen. Rent-A-Car Inc.,* 17 U.S.P.Q.2d 1398 (S.D. Fla. 1990) .......................................................................................9

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.,* 872 F. Supp. 2d 1154 (D. Colo. 2012).5, 6

*In re Int'l Flavors & Fragrances, Inc.,* 183 F.3d 1361 (Fed. Cir. 1999)........................................7

*J & J Snack Foods, Corp. v. Earthgrains Co.,* 220 F. Supp. 2d 358 (D.N.J. 2002) ......................4

*Johnston v. Standard Mining Co.,* 148 U.S. 360 (1893)..........................................................12

*Kashmir Crown Baking LLC v. Kashmir Foods, Inc.,* No. CV 2:12-01780, 2013 WL 12142539, *1 (D.N.J. Jan. 18, 2013) ...............................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)..................................2, 3

*Medinol Ltd. v. Neuro Vasx, Inc.,* 67 U.S.P.Q.2d 1205 (TTAB 2003)..........................................9

*Mego Corp. v. Mattel, Inc.,* 203 U.S.P.Q. 377, 1978 WL 21347 (S.D.N.Y. 1978)......................12

*Pharmacia Corp. v. Alcon Labs., Inc.,* 201 F. Supp. 2d 335 (D.N.J. 2002) ..................................10

*Recot, Inc. v. Becton,* 214 F.3d 1322 (Fed. Cir. 2000) ...............................................5, 6

*Sabinsa Corp. v. Creative Compounds, LLC,* 609 F.3d 175 (3d Cir. 2010)..........................3, 4, 5

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 401 F.3d 123 (3d Cir. 2005) ......2, 3, 6, 8

*SquirtCo v. Tomy Corp.,* 697 F.2d 1038, 1041 (Fed. Cir. 1983) ...............................................5, 6

*Universal Nutrition Corp. v. Carbolite Foods, Inc.,* 325 F. Supp. 2d 526 (D.N.J. 2004) .........9, 10

**Rule**

Fed. R. Civ. P. 56(a) ...................................................................................................2

**Statutes**

N.J.S.A. 56:3-13.2 ................................................................................................3

N.J.S.A. 56:3-13.3 ................................................................................................9

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (4th Ed.) .................................7, 12, 13

## I.      INTRODUCTION

Plaintiff New Reflections Plastic Surgery, LLC ("New Reflections Plastic Surgery" or "Plaintiff") files this Motion for Summary Judgment seeking a declaratory judgment under 28 U.S.C. §§ 2201 *et seq.* that Defendant Reflections Center for Skin and Body, PC ("Reflections Center" or "Defendant")'s "REFLECTIONS" mark is invalid/unenforceable, and Plaintiff's use of its "NEW REFLECTIONS PLASTIC SURGERY" mark does not constitute trademark infringement, unfair competition, or false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and applicable New Jersey and New York state laws, and cancellation of NJ Reg. No. 20852.

Plaintiff is a New Jersey cosmetic surgery practice that was founded in 2007 by Dr. Nikesh Patel.  Defendant is a New Jersey medical spa owned by Dr. Mitchell Chasin.  In November 2016, Defendant purportedly acquired, via assignment, New Jersey registered trademark number 20852 for the mark "REFLECTIONS."  At no time, however, did Defendant, its assignor (Reflections of Livingston, LLC), or the original trademark registrant (Priority Medical Care), ever use the REFLECTIONS trademark in commerce, as legally required.  Further, at the time the state of New Jersey granted Defendant's trademark registration, there existed a likelihood of confusion with at least one already-registered trademark belonging to a business providing medical and health services in the state.  In fact, the United States Patent and Trademark Office (USPTO) denied Defendant's application for a federal trademark in 2009 based on a likelihood of confusion with that mark and numerous already-existing marks.

In September 2016, Defendant sent a cease and desist letter to Plaintiff contending that Plaintiff's use of REFLECTIONS constitutes infringement and unfair competition and demanded that Plaintiff immediately cease and desist any use of the infringing REFLECTIONS trademark or

face potential legal consequences.  However, for nine years prior to Defendant's letter—time in which Plaintiff spent significant time, financial expense, and goodwill marketing and growing its business and establishing an online presence—Defendant and its predecessors made no attempt to assert their alleged rights against Plaintiff.

The undisputed facts show that Defendant's REFLECTIONS mark is invalid and unenforceable, that Defendant's delay in asserting its alleged rights in the mark was unreasonable and prejudicial to Plaintiff, and that the application filed in connection with NJ Reg. No. 20852 was based on a misrepresentation of the mark's actual use.  No reasonable jury could find that Defendant has established trademark infringement, unfair competition, or false designation of origin as a matter of law.  Accordingly, the Court should grant Plaintiff's Motion for Summary Judgment.

## II.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The moving party "can meet this burden by showing that the non-moving party has failed to product evidence sufficient to establish the existence of an element essential to its case." *Santana Prods., Inc. v. Bobrick*

2

*Washroom Equip., Inc.*, 401 F.3d 123, 131 (3d Cir. 2005) (internal quotation marks and citation omitted).

Once the movant meets its burden, the non-movant must put forth specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587. To demonstrate a genuine issue, the non-movant must present sufficient evidence—more than a mere "scintilla"—upon which a jury could reasonably find in its favor. *Anderson,* 477 U.S. at 252. Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322.

## III.   ARGUMENT

### a.   The Undisputed Facts Bar Defendant's Trademark Infringement and Lanham Act Claims Because the REFLECTIONS Mark Is Invalid

#### i.   Defendant's registration of the REFLECTIONS mark is invalid based on the likelihood of confusion with already-existing trademarks.

New Jersey's Trademark Act provides:

> A mark by which the goods or services of an applicant for registration may be distinguished from the goods or services of others *shall not be registered* if it . . . consists of or comprises a mark which so resembles a mark registered in this State or a mark or trade name previously used in this State by another . . . as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion or mistake or to deceive.

N.J.S.A. 56:3-13.2 (emphasis added). In the Third Circuit, "[t]o prove likelihood of confusion, plaintiffs must show that consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a

3

similar mark."[1]  *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010)

(citation omitted).[2]

The USPTO, in finding that Defendant's mark was likely to cause confusion with already-

existed marks, articulated the "likelihood of confusion test" as follows:

> The question is not whether people will confuse the marks, but whether the marks
> will confuse people into believing that the goods and/or services they identify come
> from the same source.  *In re West Point-Pepperell, Inc.*, 468 F.2d 200, 201, 175
> USPQ 558, 558-59 (C.C.P.A. 1972); TMEP § 1207.01(b).  For that reason, the test
> of likelihood of confusion is not whether the marks can be distinguished when
> subjected to a side-by-side comparison.  The question is whether the marks create
> the same overall impression.  *See Recot, Inc. v. M.C. Becton*, 214 F.3d 1322, 1329-
> 30, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000); *Visual Info. Inst., Inc. v. Vicon Indus.
> Inc.*, 209 USPQ 179, 189 (TTAB 1980).  The focus is on the recollection of the
> average purchaser who normally retains a general rather than specific impression
> of trademarks.  *Chemetron Corp. v. Morris Coupling & Clamp Co.*, 203 USPQ 537,
> 540-41 (TTAB 1979); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106, 108
> (TTAB 1975); TMEP § 1207.01(b).

Deposition of Mitchell Chasin, M.D. (Nov. 2, 2017) (Ex. C), Ex. P-6.  The Federal Circuit has

explained that "even if the goods in question are different from, and thus not related to, one another

---

[1] The analysis for trademark and unfair competition claims under New Jersey law is the same as the analysis under federal law.  *Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.,* 696 F. Supp. 140, 143 (D.N.J. 1988); *see also J & J Snack Foods, Corp. v. Earthgrains Co.,* 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law . . . .").

[2] Courts in this Circuit weigh the following factors: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of similarity of functions; and (10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.  *Sabinsa Corp.*, 609 F.3d at 182.

in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods.  It is this sense of relatedness that matters in the likelihood of confusion analysis." *Recot, Inc. v. Becton*, 214 F.3d 1322, 1328-29 (Fed. Cir. 2000) (finding that a likelihood of confusion could exist between FIDO LAY dog treats and FRITO-LAY human snacks and remanding to the TTAB for further review); *see also SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 1041 (Fed. Cir. 1983) (finding that a likelihood of confusion could exist between SQUIRT balloons and SQUIRT SQUAD floating water toys); *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1177 (D. Colo. 2012) (finding that a likelihood of confusion could exist between HealthONE provider of health care related services—e.g., hospital operation, health and wellness education, wellness screenings—and UnitedHealth insurance and services company).

Here, the undisputed facts show that the REFLECTIONS mark has been registered with the USPTO by third parties and used in New Jersey in connection with services related to those of Defendant that claim priority over Defendant's alleged rights. Chasin Depo. (Ex. C), Ex. P-3, P-6. For example, on October 31, 2006, Brandywine Senior Care, Inc. ("Brandywine"), a medical and health care business located in New Jersey, was granted a federal trademark for its REFLECTIONS mark, which it had used in commerce since May 1, 2000.  *Id.* at P-3.  Brandywine, like Defendant, provides health and medical services in New Jersey, and both belong to U.S. classes 100 and 101 and international class 44 (medical and beauty services).  *Id.* at Ex. P-3, P-6. Both marks create the same overall impression, and it is probable that the marks would confuse the public into believing that the services they identify come from the same source—that is, that "Reflections" is the source of both Brandywine's health and medical care business and Defendant's, even if the services the entities offer are different in kind.  *See Sabinsa Corp.*, 609

5

F.3d at 182; *Recot, Inc.*, 214 F.3d at 1328-29; *SquirtCo*, 697 F.2d at 1041; *HealthONE*, 872 F. Supp. 2d at 1177.

For this reason, the USPTO, citing Brandywine among other examples, denied Defendant's application for a federal registration.  Chasin Depo. (Ex. C), Ex. P-6.  In explaining its refusal to register Defendant's mark, the USPTO stated:

> Here, REFLECTIONS is the dominant portion of both marks.  This is the portion of the mark that consumers will remember.
>
> Attached are copies of printouts from the USPTO X-search database, which show third-party registrations of marks used in connection with the same or similar goods and/or services as those of applicant and registrant in this case.  **These printouts have probative value to the extent that they serve to suggest that the goods and/or services listed therein, namely health spa and/or laser services and physician services, are of a kind that may emanate from a single source.**  *In re Infinity Broad Corp.*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988); TMEP § 1207.01(d)(iii).

*Id.* (emphasis added).  The printouts referenced by the USPTO included the registration of a cataract and laser institute containing the wording "Reflections" in blue stylized format, as well as third-party registrations involving addiction, nutrition, and chiropractor services—all of which the USPTO determined were sufficiently related to Defendant's service to cause a likelihood of confusion.  *See id.*

Because the undisputed facts show that Defendant's REFLECTIONS trademark is invalid, and the validity of that mark is an element essential to Defendant's case, the Court should grant summary judgment in favor of Plaintiff as a matter of law.  *See Celotex*, 477 U.S. at 322; *Santana Prods.*, 401 F.3d at 131.

ii.  Defendant's registration of the REFLECTIONS mark is invalid based on nonuse.

Although a trademark registration "give[s] the owner of a mark important legal rights and benefits, the registration does not create the trademark . . . . It is the *use* of the mark to identify a single source which creates exclusive trademark rights."  McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:3 (4th Ed.) (emphasis added); *see also In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1366 (Fed. Cir. 1999); *Kashmir Crown Baking LLC v. Kashmir Foods, Inc.*, No. CV 2:12-01780, 2013 WL 12142539, at *10 (D.N.J. Jan. 18, 2013).   As the Federal Circuit has explained,

> The primary purpose of the Trademark Act of 1946 is to give Federal procedural augmentation to the common law rights of trademark owners—which is to say **legitimate users of trademarks**.  One of the policies sought to be implemented by the Act was to encourage the presence on the register of trademarks of as many as possible of the marks in *actual use* so that they are available for search purposes.

*Bongrain Int'l Corp. v. Delice de France, Inc.*, 811 F.2d 1479, 1485 (Fed. Cir. 1987) (emphasis added).

The undisputed facts establish that Defendant never used the REFLECTIONS mark in commerce, as legally required.  According to Defendant, on "[b]usiness cards normally it would be Reflections Center for Skin and Body," not "Reflections."  Chasin Depo. (Ex. C), 38:25-39:3.  Likewise, Defendant could not produce any marketing materials or documentation specifically using the term "Reflections" by itself.  *See id.* at 39:7-41:4.  In his deposition testimony, Dr. Ian Brodrick, who co-owned the Priority Medical Care practice with Dr. Chasin (of which Reflections Center for Skin and Body was once a part),[3] could not recall the name REFLECTIONS being used by the business, including on any sign, letterhead, or name card.  Deposition of Ian Brodrick, M.D. (Feb. 9, 2018) (Ex. D), 25:23-26:15.  Rather, he recalled that the name "Reflections Center for

---

[3] Dr. Brodrick and Dr. Chasin separated their business in 2007.  Deposition of Ian Brodrick, M.D. (Feb. 9, 2018) (Ex. D), 21:16-21.

Skin and Body" "was always together," as was the name "Reflections of Livingston."  *Id.* at 42:7-43:6.  Dr. Brodrick further testified that it was his understanding that, when someone entered the office, it was designated "Reflections Center for Skin and Body"—not simply "Reflections."  *Id.* at 43:7-44:1.

Furthermore, Defendant applied for federal registration of the mark "REFLECTIONS CENTER FOR SKIN & BODY" on October 4, 2008.[4]  Chasin Depo. (Ex. C), Ex. P-5.  Notably, Defendant did *not* apply for federal registration of the mark "REFLECTIONS."  *See id.*  In its application to the USPTO, Defendant attested in its declaration that it had been using the "REFLECTIONS CENTER FOR SKIN & BODY" mark since December 10, 2004.  *Id.* at Ex. P-6; *see also id.* at P-6.  And in his deposition, Dr. Chasin stated under oath that his entities had in fact been using the "Reflections Center for Skin and Body" mark as early as 2000.[5]  *See, e.g.*, *id.* at 29:12-15, 31:11-12, 144:15-18.  This evidence, combined with Dr. Chasin's and Dr. Brodrick's testimony that Defendant's business cards, office sign, and other documentation, all contained the term "Reflections Center for Skin and Body," further support that, during the relevant time period, Defendant was using "Reflections Center for Skin and Body"—not REFLECTIONS—for its services.

Defendant has put forth no evidence that it has used the REFLECTIONS mark in commerce—an element essential to its case.  Accordingly, summary judgment is proper as a matter of law.  *See Celotex*, 477 U.S. at 322; *Santana Prods.*, 401 F.3d at 131.

---

[4] On September 7, 2009, Defendant abandoned its federal trademark registration application. Chasin Depo. (Ex. C), Ex. P-5, P-6.

[5] In his deposition, Dr. Chasin also stated that the 2004 date Defendant provided to the USPTO was incorrect: "[W]e started using that mark right around the year 2000.  That's what I can testify to, which I've said previously.  This form, there is something here about a date of 2004.  I did not write that, I did not authorize this, and I am not aware of any of this."  *Id.* at 144:15-22.

iii.   Defendant's registration of the REFLECTIONS mark is invalid because Defendant made false statements as to the use of the mark in its procurement of registration.

"[W]here a registrant makes a false statement as to the use of the mark in connection with the goods or services listed in its registration, cancellation of the mark is proper." *Universal Nutrition Corp. v. Carbolite Foods, Inc.*, 325 F. Supp. 2d 526, 531 (D.N.J. 2004) (citing *Medinol Ltd. v. Neuro Vasx, Inc.,* 67 U.S.P.Q.2d 1205, 1208 (TTAB 2003) (granting summary judgment in favor of petitioner based upon respondent's fraud on PTO in procurement of registration)); *Gen. Car & Truck Leasing Sys., Inc. v. Gen. Rent-A-Car Inc.,* 17 U.S.P.Q.2d 1398, 1401 (S.D. Fla. 1990) (granting partial summary judgment in favor of defendant based upon plaintiff's fraud on the PTO).   Accordingly, courts have granted summary judgment in favor of the party alleging invalidity where a registrant has engaged in such conduct.

Here, in procuring its trademark registration from the State of New Jersey, Defendant and/or its assignors falsely claimed that the REFLECTIONS mark was in use.[6]  As discussed in Section III.a.ii., *supra*, Defendant has put forth no evidence that the mark was ever used by Reflections Center for Skin and Body, Reflections of Livingston, or Priority Medical Care.  In its application to the USPTO, Defendant attested in its declaration that it had been using the mark "Reflections Center for Skin and Body"—as opposed to "Reflections"—since December 10, 2004. Chasin Depo. (Ex. C), Ex. P-6.  And, Dr. Chasin stated under oath that the entities that owned the REFLECTIONS mark had been using the "Reflections Center for Skin and Body" mark—as opposed to "Reflections"—as early as 2000.  *See id.* at 29:12-15, 31:11-12, 144:15-18.  Thus, any representation by Defendant or prior owners of the REFLECTIONS mark that the trademark was

---

[6] New Jersey law requires that an application for registration of a mark set forth "that the mark is in use" and that the application be "verified by oath, affirmation or declaration subject to punishment for perjury."  N.J.S.A. 56:3-13.3.

used in commerce is false.  Therefore, cancellation of the mark is proper, and Plaintiff is entitled to summary judgment as a matter of law.  *See Universal Nutrition Corp.*, 325 F. Supp. 2d at 531.

### b.  The Undisputed Facts Bar Defendant's Trademark Infringement and Lanham Act Claims Based on Laches

"Laches is an equitable doctrine, operating as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." *Fox v. Millman*, 210 N.J. 401, 417 (2012) (citations omitted).  Laches governs the timeliness of trademark claims under the New Jersey Trademark Act and the Lanham Act.  *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 382 (D.N.J. 2002).  Courts evaluate a laches defense by considering the plaintiff's actual or constructive knowledge of infringement and any subsequent delay in seeking relief.  *Id.* at 383.  This Court has found that a plaintiff had constructive knowledge of infringement where the defendant "used the mark openly and notoriously." *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 995 F. Supp. 490, 502 (D.N.J. 1998) (denying relief based on plaintiff's delay in protesting defendant's use of the mark), *rev'd on other grounds,* 214 F.3d 432 (3d Cir. 2000).

#### i.  Defendant's delay in asserting its alleged trademark rights was unexplainable and inexcusable.

The undisputed facts establish that Defendant's delay in exercising its rights was unexplainable and inexcusable.  *See Fox*, 210 N.J. at 417.  Plaintiff was founded in August 2007 in New Jersey, the same state where Defendant operates.  Deposition of Dr. Nikesh Patel (Nov. 16, 2017) (Ex. A), 12:3-4; Declaration of Dr. Nikesh Patel (Ex. B), ¶ 1.  Plaintiff advertises and markets its services and medical procedures on the internet to prospective patients nationally, and Plaintiff has operated its website, www.newreflectionsps.com, continuously since at least September 2007.  Patel Decl. (Ex. B), ¶¶ 3, 5.  Further, Plaintiff's website focuses its search

optimization to prospective patients in the New Jersey and New York City areas, and Plaintiff was highly ranked on various search terms, including "new jersey plastic surgeon," "plastic surgery new jersey," and "New Reflections Plastic Surgery." *Id.* at ¶¶ 4-5; Patel Depo. (Ex. A), Ex. D-17, D-18, D-20.   Plaintiff has also purchased online local and regional newspaper and magazine advertisements.  Patel Decl. (Ex. B), ¶ 4.   Moreover, Dr. Patel, the owner and founder of New Reflections Plastic Surgery, has attended multiple Plastic Surgery and Cosmetic Surgery conferences throughout the years as part of his normal Maintenance of Certification of his Specialty in Plastic Surgery.  *Id.* at ¶ 6.   These conferences include Plastic Surgery The Meeting (held by American Society of Plastic Surgeons (ASPS)), The Aesthetic Meeting (held by American Society for Aesthetic Plastic Surgery (ASAPS)), Vegas Cosmetic Surgery Meeting, New Jersey Society of Plastic Surgery meetings, Monmouth County Society of Plastic Surgeons meetings (six to eight times per year), and marketing and educational meetings by various vendors.  *Id.*  At these events, Dr. Patel represented himself as New Reflections Plastic Surgery.  *Id.*  Considerable evidence establishes that Plaintiff has "used the mark openly and notoriously."  *See Commerce Nat'l Ins. Servs.*, 995 F. Supp. at 502.

Despite Plaintiff's conspicuous presence on the internet, in newspapers and magazines, and at major plastic surgery conferences and events throughout Defendant's region, Defendant made no attempt to assert its alleged rights against Plaintiff for *nine years*.  Patel Decl. (Ex. B), ¶ 9.  It was only in September 2016 that Defendant sent a cease and desist letter to Plaintiff asserting that Plaintiff's use of REFLECTIONS constituted infringement and unfair competition.  *Id.*; Chasin Depo. (Ex. C), Ex. P-7.  Dr. Chasin testified that he only became aware of Plaintiff's existence in "April of '16 roughly."  Chasin Depo. (Ex. C), 113:23-114:2.  Dr. Chasin admits that he "ha[s] no recollection of putting in "Reflections" and searching for our name" on Google or

any other search engine prior to that time, *id.* at 116:2-16, and that he "never asked someone to search for our name" or for "Reflections" or "Reflections Center for Skin and Body," *id.* at 120:19-121:6. Defendant has provided no justification for its delay in taking any such action. *See Commerce Nat'l Ins. Servs.*, 995 F. Supp. at 502 (citing *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535 (2d Cir. 1964) (stating that a party may be barred from relief when the alleged infringer's "conduct has been open and no adequate justification for ignorance is offered")).

Defendant "had a duty to police the marketplace for infringing uses of its mark." *Id.* (holding that delay in protesting defendant's open use of the mark by plaintiff who failed to police the marketplace was inexcusable). Defendant's admitted failure to do so and/or to discover a purportedly infringing competitor located within close geographic proximity that had a considerable advertising, internet, and physical presence is unreasonable and inexcusable. *See id.*; *see also Johnston v. Standard Mining Co.,* 148 U.S. 360, 370 (1893) ("[P]laintiff is chargeable with such knowledge as he might have obtained upon inquiry provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."); *Mego Corp. v. Mattel, Inc.,* 203 U.S.P.Q. 377, 383, 1978 WL 21347 (S.D.N.Y. 1978) (relief denied where the plaintiff was held to have waited "until the Eleventh Hour" when it "should have known . . . and could have known" about the defendant's plans earlier from trade journals). Accordingly, Defendant's delay in asserting its alleged rights was unexplainable and inexcusable as a matter of law.

ii.   Defendant's delay was prejudicial to Plaintiff.

The undisputed facts also establish that Defendant's delay in exercising its alleged rights was prejudicial to Plaintiff. *See Fox*, 210 N.J. at 417. A party raises a successful laches defense

if the trademark holder's "long failure to exercise its legal rights has caused [the allegedly infringing party] to rely to its detriment by building up a valuable business around its trademark." 4 McCarthy § 31:12 (citing cases).  "Laches becomes relevant precisely where the senior [user of the mark] delays in asserting its rights for so long that the junior [user] has developed sufficient demand and goodwill through its own efforts that it would be inequitable to enforce the senior's rights." *Commerce Nat'l Ins. Servs.*, 995 F. Supp. at 503 (internal quotation marks and citations omitted).  This Court has found a trademark holder's delay to be prejudicial where it "lulled [the alleged infringer] into a sense of security regarding its use of the [contested] mark," and the alleged infringer promoted itself and its service with the mark and "built up demand and good will sufficient to sustain and grow its business." *Id.*

Here, Plaintiff spent significant time and financial expense marketing and growing its business and creating goodwill.  Since its inception, Plaintiff has invested approximately $700,000 to grow its business and advertise, publicize, and promote its services, which has resulted in patients, referring physicians, and other members of the public identifying the New Reflections Plastic Surgery name exclusively with its medical services.  Patel Decl. (Ex. B), ¶ 8.  For example, Plaintiff has spent a significant amount of time and money on marketing and search optimization under the New Reflections Plastic Surgery name, including Google placement and search engine marketing with first page placements and multiple web-based referral platforms.  *See, e.g.*, Patel Depo. (Ex. A), Ex. D-14 (invoice for website design totaling $5450.00 plus $450.00 per month upon completion of website), D-16 (invoice totaling $8800.00 for digital marketing); D-17 & D-18 (website ranking reports); D-20 (web marketing report); Patel Decl. (Ex. B), ¶¶ 4-5.  Plaintiff has also purchased online local and regional newspaper and magazine advertisements.  Patel Decl. (Ex. B), ¶ 4.  In order to grow his business and build goodwill, Dr. Patel—using the New

13

Reflections Plastic Surgery name—has spent considerable time and resources networking and getting to know and associate with local physicians and businesses and meeting with multiple potential partners. *Id.* at ¶ 7. Thus, because Plaintiff promoted itself and its services with the New Reflections Plastic Surgery mark and "built up demand and good will sufficient to sustain and grow its business," it would be inequitable to enforce Defendant's alleged rights. *See Commerce Nat'l Ins. Servs.*, 995 F. Supp. at 503.

Because the undisputed facts show that there was an unexplainable and inexcusable delay by Defendant in exercising its alleged right, and this delay resulted in prejudice to Plaintiff, Plaintiff may properly raise the defense of laches to Defendant's trademark infringement and Lanham Act claims. For this additional reason, the Court should grant summary judgment in favor of Plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

Dated: May 10, 2018                          Respectfully submitted,

                                             s/ Dariush Keyhani
                                             Dariush Keyhani (DK-9673)
                                             Meredith & Keyhani, PLLC
                                             125 Park Avenue, 25th Floor
                                             New York, New York 10017
                                             Tel. (212) 760-0098
                                             Fax (212) 202-3819
                                             dkeyhani@meredithkeyhani.com
                                             *Attorneys for Plaintiff*