Gregg A. Paradise
Aaron S. Eckenthal
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ  07090-1497
Tel:   908 654 5000
Fax:  908 654 7866

*Attorneys for Defendant Reflections*
 *Center for Skin and Body, PC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NEW REFLECTIONS PLASTIC SURGERY, LLC | : | Civil Action No. 16-8523-FLW-TJB |
| Plaintiff, | : | |
| v. | : | Freda L. Wolfson, U.S.D.J. |
| | : | Tonianne J. Bongiovanni, U.S.M.J. |
| REFLECTIONS CENTER FOR SKIN AND BODY, PC, | : | |
| | : | |
| Defendant. | : | |
| | x | |

**DEFENDANT'S BRIEF IN RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

# TABLE OF CONTENTS

Page

I.INTRODUCTION ....................................................................................................1

II.FACTUAL BACKGROUND ...............................................................................2

    A.    Reflections Center For Skin And Body ...........................................2

    B.    The REFLECTIONS Mark ...............................................................4

    C.    Reflections' Only Recently Learned About Plaintiff.......................5

III.THE LAW REGARDING SUMMARY JUDGMENT ........................................6

IV.ARGUMENT .......................................................................................................7

    A.    Plaintiff Fails To Show The REFLECTIONS Mark Is
          Invalid Based On Any Third-Party Marks.......................................7

          1.    The Brandywine Registration Does Not Invalidate
               The REFLECTIONS Mark ...................................................7

               a.    Plaintiff Has Not Established Prior Use Of The
                    REFLECTIONS Mark .................................................7

               b.    There Is No Likelihood Of Confusion Between The
                    REFLECTIONS Mark And The Brandywine
                    Registration ...............................................................10

          2.    Plaintiff's Reliance On Other Third-Party
               Registrations Fails To Show The REFLECTIONS
               Mark Is Invalid...................................................................11

          3.    Defendant Has Continuously Used Its
                REFLECTIONS Mark .........................................................12

                a.    The Use Of The REFLECTIONS Mark With
                    Generic/Descriptive Phrasing Beneath Does Not
                    Create A Unitary Trademark ......................................12

                b.    Use Of The REFLECTIONS Mark Is Confirmed By
                    Analogous Cases.......................................................16

               c.    The Specimens Submitted To Show Use Of The
                    Brandywine Registration Supports Use Of The
                    REFLECTIONS Mark .................................................18

                d.    Reflections' Statements About Use To Secure  And
                    Renew Its REFLECTIONS Mark Were Truthful .........................20

    B.    Laches Is Not Applicable Under The Circumstances And
          Does Not Preclude Plaintiff's Claims.............................................20

V.CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000)..................................................................11, 12

*Allen v. Walker & Gibson*,
  235 F. 230 (N.D.N.Y. 1916) ...............................................................21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...............................................................................6

*Chattanooga Mfg., Inc. v. Nike, Inc.*,
  301 F.3d 789 (7th Cir. 2002) ...............................................................21

*Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc.*,
  995 F. Supp. 490 (D.N.J. 1998) .....................................................24, 25

*Covertech Fabricating, Inc. v. TVM Bldg. Prods.*,
  855 F.3d 163 (3d Cir. 2017).................................................................20

*Dena Corp. v. Belvedere Int'l, Inc.*,
  950 F.2d 1555 (Fed. Cir. 1991)..................................................13, 14, 18

*In re EBS Data Processing*,
  212 U.S.P.Q. 964 (T.T.A.B. 1981) .....................................................13

*Elder Mfg. Co. v. Int'l Shoe Co.*,
  194 F.2d 114 (C.C.P.A. 1952) ...............................................................8

*Family Circle, Inc. v. Family Circle Assoc., Inc..*,
  205 F. Supp. 940 (D.N.J. 1962) ...............................................16, 17, 18

*Fox v. Millman*,
  210 N.J. 401 (2012) ..............................................................................20

*Halsey v. Pfeiffer*,
  750 F. 3d 273 (3d Cir. 2014)..............................................................6, 7

*Hydro-Dynamics, Inc. v. George Putnam & Co.*,
  811 F.2d 1470 (Fed. Cir. 1987).............................................................8

*Johnson v. Standard Mining Co.*,
  148 U.S. 360 (1893)...............................................................................21

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)..................................................................11, 12

*In re Kraft, Inc.*,
  218 U.S.P.Q. 571 (T.T.A.B. 1983) .................................................................13

*In re Magic Muffler Serv., Inc.*,
  184 U.S.P.Q. 125, 126 (T.T.A.B. 1974) .........................................................13

*Maritz, Inc. v. Cybergold, Inc.*,
  947 F. Supp. 1328 (E.D. Mo. 1996)..................................................................9

*Mego Corp. v. Mattel, Inc.*,
  203 U.S.P.Q. 377 (S.D.N.Y. 1978)..................................................................24

*Mktg. Displays, Inc. v. TrafFix Devices, Inc.*,
  200 F.3d 929 (6th Cir. 1999) ...........................................................................11

*N.J. Physicians United Reciprocal Exch. v. Privilege Underwriters, Inc.*,
  No. 15-6911, 2016 U.S. Dist. LEXIS 143745 (D.N.J. Oct. 18, 2016) ...................................20

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998)..............................................................................20

*Pollution Denim & Co. v. Pollution Clothing Co.*,
  547 F. Supp. 2d 1132 (C.D. Cal. 2007) .............................................................9

*Robertson v. Allied Signal, Inc.*,
  914 F.2d 360, 382 n.12 (3d Cir. 1990) ...............................................................7

*Scott v. Harris*,
  550 U.S. 372 (2007)...........................................................................................6

*Symbol Techs., Inc. v. Proxim Inc.*,
  No. 01-801, 2004 U.S. Dist. LEXIS 14949 (D. Del. July 28, 2004) .....................................21

*Universal Nutrition Corp. v. Carbolite Foods, Inc.*,
  325 F. Supp. 2d 526 (D.N.J. 2004) ....................................................................8

## STATUTES, RULES & OTHER AUTHORITIES

15 U.S.C. § 1057(c) .............................................................................................9

Fed. R. Civ. P. 12(b) .........................................................................................17

Federal Rule of Civil Procedure 56(a) ...............................................................6

Merchant, the Director of Trademark Examining Operations,
  49 T.M.Rep. 911 ..............................................................................................17

I.    __INTRODUCTION__

Plaintiff New Reflections Plastic Surgery, LLC ("Plaintiff" or "New Reflections") notably did not choose to move for summary judgment of noninfringement of Defendant's Reflections Center for Skin and Body, PC ("Defendant" or "Reflections") REFLECTIONS mark.  Instead, Plaintiff chose to seek summary judgment on its affirmative defenses.  These claims are without merit.

Plaintiff moved for summary judgment on two grounds.   First, that Defendant's REFLECTIONS mark is invalid.   This argument is rooted on the assertions that the REFLECTIONS mark was improperly registered because it creates a likelihood of confusion with allegedly already-existing trademarks, and second, that Defendant never used its mark. However, summary judgment should be denied because the established record lacks facts to support either of these points.  The REFLECTIONS mark was properly registered in New Jersey, and the record establishes that there is no confusion with any prior existing marks.  Additionally, the record and case law establish that Reflections has validly used its REFLECTIONS mark at least since the date of first use specified in its trademark registration — December 2000.  This date is nearly eight (8) years before Plaintiff's inception, and also years earlier than any of the trademark registrations cited by Plaintiff.

The second ground for summary judgment is an assertion of a defense of laches.  This affirmative defense also lacks any support from the record.  The evidence of record establishes that Reflections asserted its trademark rights against Plaintiff within weeks of when Reflections first learned of Plaintiff's use of the REFLECTIONS mark.  There was no delay, and Plaintiff was not prejudiced.

Plaintiff's motion for summary judgment should therefore be denied in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Reflections Center For Skin And Body

After his residency, around 1988, Dr. Mitchell Chasin and a partner, Dr. Ian Brodrick, opened Priority Medical Care, which was a private practice urgent care medical facility.  (Exh. A (Chasin Dep. 20:2-24:3).)[1]  The practice would provide services that a family doctor would provide in a family doctor practice or family medical practice, but also more hands-on procedures, including suturing, repairing wounds, eye injuries, trauma, dermatological procedures, orthopedic injuries, and infectious disease care.  (*Id.* (Chasin Dep. 23:4-25:2).) Priority Medical Care was based in Bridgewater, New Jersey.  (*Id.* (Chasin Dep. 26:17).)

Dr. Chasin enjoyed the aesthetic procedures offered through the practice and began to do more of those type of procedures.  He also expanded that part of the practice, which soon began operating as "Reflections Center for Skin and Body" around the year 2000.  (*Id.* (Chasin Dep. 27:18-23).)  Not long after, a space dedicated to Reflections Center for Skin and Body, on the same floor as Priority Medical Care, was opened.  (*Id.* (Chasin Dep. 28:18-19).)  It had a dedicated entrance, separate waiting area, and operated as a completely separate division with its own separate sign.  (*Id.* (Chasin Dep. 28:4-7).)  The sign on the building has and continues to be the word "Reflections" with smaller print beneath.  (Exh. B (Chasin Decl. ¶¶ 3, 4, 7).)  For example, the original sign used "Reflections" with smaller words "center for skin & body," similarly as shown below:

---

[1] All citations to Exhibits are found in the Declaration of Aaron S. Eckenthal being filed concurrently herewith.



(*Id*. (Chasin Decl. ¶ 4).)  As for promotional materials, "Reflections" has been used on its own or in conjunction with the small wording beneath.   (*Id*.   (Chasin Decl.   ¶ 5); Exh. C (REFLEC-000129).)  Reflections was and still is used to refer to the business as an abbreviation. (Exh. A   (Chasin Dep. 39:2-6), Exh. B   (Chasin Decl.   ¶¶ 7,  8,  9), Exh. D   (Brodrick Dep. 41:6-23).)   Business cards for the practice utilize "Reflections" in the same manner as signage and promotional materials.   (Exh. B (Chasin Decl. ¶ 5).)   Patients also refer to the practice as "Reflections" and the phone is answered "Reflections."   (*Id.* (Chasin Decl. ¶¶ 11, 12).)

Recently, Reflections changed the wording beneath the REFLECTIONS mark as follows:



(*Id.* (Chasin Decl. ¶ 8).)  While the signs on buildings still show the former, the practice is in the middle of changing over to the new wording beneath.  (*Id.*) The new use appears on the website and some promotional materials for now.  (*Id.*)  No matter which words appear beneath the word "Reflections," often a TM symbol is used directly after the REFLECTIONS mark to identify the trademark claimed.  (*Id.* (Chasin Decl. ¶ 10).)

Eventually, a second location in Livingston, New Jersey was opened, which was referred to as Reflections of Livingston at the business level, but used the same name and signage as the

original Reflections Center for Skin and Body in Bridgewater.[2]   (*Id.* (Chasin Decl. ¶ 6).)

Eventually, in 2007, Dr. Chasin and Dr. Brodrick went their separate ways because of their

diverging specialties.   (Exh. D (Brodrick Dep. 20:21-23).)   Dr. Brodrick wanted to concentrate

on emergency medical care, and Dr. Chasin wanted to concentrate on aesthetic procedures.   (*Id.*)

A separation agreement was executed in April 2007 providing that Dr. Chasin acquired all rights

to Reflections and Dr. Brodrick acquired all rights to Priority Medical Care.   (Exh. E (Priority

Medical Care Reorganization Agreement).)   The REFLECTIONS mark and New Jersey

Registration were also transferred at this time.   (*Id.*)

While taking an interest in aesthetic procedures, Dr. Chasin became trained in cosmetic

medicine and offered procedures that include injectable treatments, laser medicine, liposuction,

resurfacing procedures, regenerative medicine procedures, non-skin based laser procedures,

non-facial based laser procedures, etc.   (Exh. A (Chasin Dep. 34:21-35:25).)   In the late 1990s or

early 2000 the practice introduced a new laser hair removal procedure.   (Exh. D (Brodrick

Dep. 10:21-24).)   By 2001, cosmetic procedures offered by Reflections included skin and body

treatment services, including microdermabrasion, laser hair removal, laser wrinkle reduction,

facials, body treatments, skin treatments, massages, and waxing.   (Exh. A (Chasin

Dep. 94:13-16).)   The Reflections medical practice also offered plastic surgery services,

including invasive procedures that were performed by trained plastic surgeons.   (*Id.* (Chasin

Dep. 92:4-9; 99:7-100:11).)

### B.  **The REFLECTIONS Mark**

On November 16, 2001, Priority Medical Care, which at the time was co-owned by

Dr. Chasin and Dr. Brodrick, obtained New Jersey State Trademark Reg. No. 20852 for the mark

---

[2] The Bridgewater location eventually moved to Martinsville, but all signage remained consistent with "Reflections" appearing in larger font as compared to any wording beneath it.

REFLECTIONS.  (Exh. F.)  The mark was registered for "skin and body treatment services, including microdermabrasion, body/skin treatments, massages, etc.," in class 42.  (*Id.*)  Over the course of the medical practice, these services have been expanded and now the practice supports a full range of cosmetic procedures.  (Exh. B (Chasin Decl. ¶ 2).)  The registration for REFLECTIONS states a date of first use of December 1, 2000.  (Exh. F.)

By way of the separation agreement between Dr. Chasin and Dr. Brodrick in April 2007, the REFLECTIONS mark was assigned to Reflections of Livingston, LLC.  (Exh. E.)  To that end, in 2011 a confirmatory assignment was filed with the State of New Jersey formally recording the assignment that took place in April 2007.  (Exh. G.)  In November 2016, the mark was subsequently assigned from Reflections of Livingston, LLC to Reflections Center for Skin and Body, PC, the Defendant in this case.  (Exh. H.)  On November 3, 2016, Reflections renewed New Jersey State Trademark Reg. No. 20852 for REFLECTIONS.  (Exh. I.)  The REFLECTIONS mark has been and continues to be in use in the State of New Jersey.  (Exh. B (Chasin Decl. ¶ 13).)

### C.   Reflections' Only Recently Learned About Plaintiff

In the months leading up to April 2016, Reflections received comments from patients that were made to Dr. Chasin about another location.  (Exh. J.)  Dr. Chasin also heard comments from patients that included a belief that there was a new "South Jersey" location, and congratulations for opening a new office in Freehold.  (*Id.*)  Dr. Chasin also had at least one patient inquire about different pricing from "your other office in Freehold."  (*Id.*)

These patient encounters caused Jennifer Peterson, Reflections' marketing person, to perform an online search around April 2016.  (*Id.*)  The results from that initial search led to the discovery of Plaintiff's practice in Freehold, New Jersey.  (*Id.*)  Upon review of Plaintiff's services offered at its practice, it was determined that many overlapped with the services and

procedures performed by Reflections, leading to the understanding how some patients could be confused between Plaintiff's practice and Reflections.  (*Id.*)

Within a few days of learning about Plaintiff, Laura Dougherty, Reflections' Office Manager, called Plaintiff and spoke with Dr. Nikesh K. Patel, MD, the owner of the practice. (*Id.*)   During that phone call, Ms. Dougherty advised that Reflections is the owner of the REFLECTIONS mark and that Plaintiff's use of the REFLECTIONS mark was infringing.  (*Id.*) Ms. Dougherty also requested that Plaintiff change the name of its practice, but Dr. Patel refused. (*Id.*)   Reflections contacted legal counsel, and counsel for Reflections sent a cease and desist letter to Plaintiff on September 12, 2016.   (*Id.*)   On September 29, 2016, Plaintiff filed a Declaratory Judgment action in the Southern District of New York (16-cv-07639).   That action was dismissed because of lack of jurisdiction and the instant lawsuit seeking a declaratory judgment was filed by Plaintiff on November 15, 2016.

## III.   THE LAW REGARDING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the c ourt must view the evidence in the light most favorable to the nonmoving party, and must provide that party the benefit of all reasonable inferences.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Halsey v. Pfeiffer*, 750 F. 3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence," because "'an inference based upon a speculation or conjecture does not create a

6

material factual dispute sufficient to defeat summary judgment.'"   *Halsey*, 750 F.3d at 287

(quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

IV.   <u>ARGUMENT</u>

Plaintiff has failed to establish critical elements of each of its claims in its motion. Moreover, Plaintiff has not established the absence of all genuine issues of material fact to render summary judgment proper under the circumstances of this case.  There are simply too many factual issues that remain for summary judgment to be appropriate.  Plaintiff has not established that the REFLECTIONS mark is invalid, and Plaintiff has also not established that laches should bar Reflections' trademark infringement claim.

**A.      Plaintiff Fails To Show The REFLECTIONS**
**Mark Is Invalid Based On Any Third-Party Marks**

Plaintiff asserts that the REFLECTIONS mark is invalid based on: (1) a likelihood of confusion with already existing marks, including U.S. Registration No. 3,164,379 for REFLECTIONS (the "Brandywine Registration") and other third-party marks;  (2) that Reflections never used its mark; and (3) that Reflections made a false statement as to the use of the mark in its procurement of registration.  Plaintiff's arguments are fraught with factual disputes.  Plaintiff's legal theories are also incorrect with no support for its positions.  Summary judgment should be denied.

**1.      The Brandywine Registration Does**
**Not Invalidate The REFLECTIONS Mark**

**a.      Plaintiff Has Not Established**
**Prior Use Of The REFLECTIONS Mark**

Plaintiff has provided no evidence that any third-party has used the same, or a confusingly similar, REFLECTIONS mark prior to Reflections.  Plaintiff relies only on the Brandywine Registration as a third-party mark that has priority to the REFLECTIONS mark. Plaintiff argues, *inter alia*, that the Brandywine Registration has a date of first use (May 2000),

which predates the REFLECTIONS mark (December 2000), and that because the Brandywine Registration is for similar services, in a similar geographic area of New Jersey, the Brandywine Registration is likely to cause confusion with the REFLECTIONS mark and renders it invalid.

Here, there is nothing in the record that demonstrates that the Brandywine Registration was actually in use prior to December 2000. Plaintiff relies solely on the date of first use listed in the Brandywine Registration as its evidence. However, such evidence is insufficient to establish a date of first use, which still must be proven. *Elder Mfg. Co. v. Int'l Shoe Co.*, 194 F.2d 114 (C.C.P.A. 1952); *Hydro-Dynamics, Inc. v. George Putnam & Co.,* 811 F.2d 1470, 1473 (Fed. Cir. 1987) (holding a plaintiff is not bound by the first use date alleged in its trademark application); *Universal Nutrition Corp. v. Carbolite Foods, Inc.*, 325 F. Supp. 2d 526 (D.N.J. 2004) (holding that a party may prove a date of first use earlier than the date identified in its application for registration). Plaintiff has not pointed to anything in the record and has not established that the Brandywine Registration is entitled to the May 2000 date of first use specified in its registration.

Similarly, because Applicant is not bound by the date of first use in its trademark application, it is still possible for Reflections to prove a date of first use prior to December 2000, the date specified in its trademark application. (Exh. F.) It is also possible that Reflections has a date of first use prior to May 2000, the date of first use specified in the Brandywine Registration. For example, Dr. Chasin testified that he began using the name Reflections Center for Skin and Body "[a]pproximate[ly] year 2000." (Exh. A (Chasin Dep. 29:15, 31:10-12, 48:2).) And even Dr. Brodrick testified that he was unclear as to the timing. (Exh. D (Brodrick Dep. 15:21-17:10).) As such, without either side fully flushing out the date of first use, a sufficient material fact exists that precludes entry of summary judgment.

8

Next, Reflections has superior rights over the Brandywine Registration to use its REFLECTIONS mark in its geographic area of use prior to issuance of the federal registration.

Trademark Statute 15 U.S.C. § 1057(c) states:

> Application to register mark considered constructive use:  Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing—
>
> (1) *has used the mark*;
>
> (2) has filed an application to register the mark which is pending or has resulted in registration of the mark; or
>
> (3) has filed a foreign application to register the mark on the basis of which he or she has acquired a right of priority, and timely files an application undersection 1126(d) of this title to register the mark which is pending or has resulted in registration of the mark.

15 U.S.C. § 1057(c) (emphasis added).  This means that the person holding the registration certificate for a mark has a nationwide right of priority in using that mark, only back to the date on which the application to register the mark was filed.

In the present situation, the REFLECTIONS mark was filed in November 2001 and lists a date of first use in New Jersey of December 2000.  (Exh. F.)  The Brandywine Registration was not filed until years later — July 23, 2004.   (Exh. K.)   This means that the Brandywine Registration was taken subject to Reflections' prior use of its REFLECTIONS mark, and Reflections has superior rights to use its REFLECTIONS mark in its geographic area of prior use.

Case law confirms and is clear on this point.  *See Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132 (C.D. Cal. 2007) (holding defendants were senior users of the "Pollution Clothing" mark and had used the mark prior to the date plaintiffs filed its trademark application); *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1336 (E.D. Mo. 1996)

9

("Such right of priority exists as to all persons except those who, prior to the date such person filed the application to register, have used the mark or have filed an application to register the mark which is pending or has been registered."). Under these circumstances, even if the Brandywine Registration has an earlier use date of May 2000, it is of no consequence. Thus, the REFLECTIONS mark cannot be considered invalid over the Brandywine Registration.

### b.   There Is No Likelihood Of Confusion Between The REFLECTIONS Mark And The Brandywine Registration

Plaintiff has not established that the REFLECTIONS mark is invalid over the Brandywine Registration because of a likelihood of confusion. The Brandywine Registration is registered to a company that provides quality care and services to seniors in the form of assisted living and Alzheimer's and dementia care. (Exh. L.) One particular center is the Brandywine Living at Reflections, which is a memory-care assisted living community located in Brick, New Jersey. (*Id.*) The Brandywine centers also appear to have a special care program that operates under the name "Reflections" and is described as a

> unique, stimulating, supportive environment for residents with Dementia, Alzheimer's and other related memory care needs. The environment is specifically designed to be safe and secure, with all the warmth and simple elegance people expect from Brandywine. Patience, kindness and compassion are our hallmark. The past is important, but your loved one's future is our focus.

(*Id.*) It is unclear whether any of these facilities or programs using "Reflections" actually constitute "medical care and health care" services for which "Reflections" is registered.

Indeed, Plaintiff has not shown that the services provided under the Brandywine Registration are medical care and health care services, or whether those services constitute similar services to those offered by Reflections to cause a likelihood of confusion with the REFLECTIONS mark. Likewise, Plaintiff presents no evidence to demonstrate that a consumer/patient would confuse the cosmetic services offered by Reflections with the

10

Brandywine Registration used for memory care assisted living facilities and programs associated with it.  Plaintiff has not established that confusion in the marketplace would exist between individuals looking for a doctor to perform cosmetic procedures, versus individuals looking for assisted care living.

In fact, to the contrary, despite using the REFLECTIONS mark since at least December 2000, Dr. Chasin is unaware of any actual confusion with the Brandywine Registration, ever. (Exh. B (Chasin Decl. ¶ 14).)   The same cannot be said with Plaintiff's use of the REFLECTIONS mark where Reflections experienced actual confusion among its patients.  (*See* Exh. J (Def.'s Resp. to Pl.'s Interrog. 3).)   Thus, Plaintiff has not established that the REFLECTIONS mark is invalid over the Brandywine Registration.

### 2. Plaintiff's Reliance On Other Third-Party Registrations Fails To Show The REFLECTIONS Mark Is Invalid

When the United States Trademark Office examines an application, it relies solely on the filing dates for purposes of determining whether other marks exist that may cause a likelihood of confusion.  In that regard, Plaintiff's reliance on an Office Action that refused registration of REFLECTIONS CENTER FOR SKIN AND BODY is misplaced because little weight should be given to an Examiner's unappealed likelihood of confusion determination.  The Third Circuit has concluded that "a court need not defer to the patent office when there is relevant evidence not considered by the office that informs the analysis." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220–21 (3d Cir. 2000); *see also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 715 (3d Cir. 2004) (finding that a USPTO's determination may be considered, but does not need to be given weight); *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999) (indicating that "no deference is due [to] a PTO decision with respect to evidence the PTO did not consider").  Additionally, the Third Circuit held:

> Although we prefer to avoid conflicts with the [US]PTO, we do not think that such a decision needed to receive deference here, where the District Court's conclusion that the marks were not confusingly similar relied upon the housemarks and Victoria's Secret's disclaimer, matters apparently not considered by the examining attorney.

*A & H*, 237 F.3d at 221; *see Kos*, 369 F.3d at 715 (following the precedent set by *A & H* and declining to give USPTO determinations weight). As such, Plaintiff has not established and relies on an inappropriate standard for a likelihood of confusion analysis in an attempt to demonstrate that the REFLECTIONS mark is invalid.

Here, the Office Action refusal on which Plaintiff relies refused registration of REFLECTIONS CENTER FOR SKIN AND BODY over two marks: (1) RD REFLECTIONS DERMATOLOGY & CENTER FOR SKIN CARE for physician services, filed in 2007 with a date of first use in 2005; and (2) REFLECTIONS MEDPSA for spa services, filed in 2005 with a date of first use in 2005. (Exh. M.) However, the REFLECTIONS mark was first used and registered in New Jersey prior to these marks and also has a date of first use prior to the dates listed in these registrations. (Exh. F.) As such, similar to the Brandywine Registration discussed above, each of these marks takes federal registration rights subject to Reflections' rights in its geographic location in New Jersey. There is no evidence of record, and Plaintiff has failed to show that these marks were even used in New Jersey prior to Reflections' date of first of 2000 stated in its registration for REFLECTIONS or its filing date of 2001. In fact, the only evidence of record shows that the cited registrations were each used years after Reflections' first use. Accordingly, these two marks cannot be used to invalidate the REFLECTIONS mark.

### 3. Defendant Has Continuously Used Its REFLECTIONS Mark

#### a. The Use Of The REFLECTIONS Mark With Generic/Descriptive Phrasing Beneath Does Not Create A Unitary Trademark

Reflections has unequivocally used its REFLECTIONS mark since at least its date of first use specified in its registration and has continuously used its mark since that time. Plaintiff fails

to present any evidence to the contrary.  Indeed, the evidence of record establishes that Reflections has used its mark consistent with the use required to obtain and maintain its registration for its REFLECTIONS mark.  To the contrary, Plaintiff asserts that based on deposition testimony by Dr. Chasin and Dr. Brodrick, the REFLECTIONS mark was never used by itself — it always included "Center for Skin and Body," therefore, Plaintiff alleges that the mark is actually "REFLECTIONS CENTER FOR SKIN AND BODY."  The facts do not support Plaintiff's assertions.  Plaintiff's argument amounts to an assertion that Reflections' use of "REFLECTIONS CENTER FOR SKIN ANDY BODY" amounts to a unitary mark — a mark that creates a different commercial impression separate and apart from any unregistrable component.  Yet Plaintiff points to no case law in support of its position.  None exists.

Here, the word "REFLECTIONS" is the mark and is separate from the wording that may appear beneath it.  A mark or portion of a mark is considered "unitary" only when it creates a commercial impression separate and apart from any unregistrable component.  The test for unitariness inquires whether the elements of a mark are so integrated or merged together that they cannot be regarded as separable.  *See In re EBS Data Processing*, 212 U.S.P.Q. 964, 966 (T.T.A.B. 1981); *In re Kraft, Inc.*, 218 U.S.P.Q. 571, 573 (T.T.A.B. 1983).  The inquiry focuses on "how the average purchaser would encounter the mark under normal marketing of such goods and also . . . what the reaction of the average purchaser would be to this display of the mark." *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 1561 (Fed. Cir. 1991) (quoting *In re Magic Muffler Serv., Inc.*, 184 U.S.P.Q. 125, 126 (T.T.A.B. 1974)).  The Court of Appeals for the Federal Circuit has set forth the elements of a unitary mark:

> A unitary mark has certain observable characteristics.  Specifically, its elements are inseparable.  In a unitary mark, these observable characteristics must combine to show that the mark has a distinct meaning of its own independent of the meaning of its

constituent elements.  In other words, a unitary mark must create a single and distinct commercial impression.

*Dena*, 950 F.2d at 1561, 21 U.S.P.Q.2d at 1052.

In this instance, the REFLECTIONS mark is always separable from the words that appear beneath it.  The REFLECTIONS mark is a separate registrable component from the words that appear beneath it.  The medical practice is referred to as REFLECTIONS, patients refer to the practice as REFLECTIONS, and the telephone is answered — "REFLECTIONS."  (Exh. B (Chasin Decl. ¶¶ 9, 11, 12).)  And in the way that REFLECTIONS frequently appears, the word REFLECTIONS usually appears in larger letters to stand out separately and apart from "center for skin & body" as demonstrated:



(*Id.* (Chasin Decl. ¶¶ 3-5).)  Simply using the REFLECTIONS mark in this manner with the generic/descriptive words beneath does not create a unitary mark.

In fact, the above could constitute five (5) separate and distinct trademarks given the arrangement and use.  For instance five possible trademarks could be as follows:

1. REFLECTIONS;

2. CENTER FOR SKIN & BODY;

3. REFLECTIONS CENTER FOR SKIN & BODY;

4. The logo appearing to the left; and

5. Logo with the words REFLECTIONS CENTER FOR SKIN & BODY.

While REFLECTIONS may appear together with "center for skin & body" on Reflections' website, and in marketing/promotional material and signage, that does not create a unitary mark that could be considered nonuse of the REFLECTIONS mark.  For example, when a phrase does not create a distinct meaning independent of the meaning of the separate elements, often times the Trademark Office will require a disclaimer.  TMEP 121305(b)(ii)(B) (stating ESTEE LAUDER FOR MEN for "cologne" was required to disclaim FOR MEN since it did not create a distinct meaning independent from the meaning of the separate elements).  Similarly, in Reflections' trademark application for REFLECTIONS CENTER FOR SKIN AND BODY, the Examiner required a disclaimer for "Center for Skin and Body" indicating it is an unregistrable and nondistinctive component of the mark.  (Dkt.24-4.)  Thus, as established by the Trademark Office, REFLECTIONS is the registrable component of the mark and creates a distinct meaning independent from the remainder of the unregistrable component.

To demonstrate the severability between "Reflections" and the wording used beneath it, look no further than the recent changes made to the words that appear beneath "Reflections." For example, Reflections is in the process of changing the words beneath its REFLECTIONS mark so it will appear as follows:



(Exh. B (Chasin Decl. ¶ 8).)  This further supports that the REFLECTIONS mark is not unitary with the words appearing beneath it.  Therefore, Reflections has for over 17 years made good trademark use of its REFLECTIONS mark.

**b.    Use Of The REFLECTIONS Mark**
<u>**Is Confirmed By Analogous Cases**</u>

Case law in New Jersey is also well established in support of use based on the current facts of Reflections' use of its REFLECTIONS mark.   That is, a primary word/phrase that appears larger than other annexed words secondary in significance and in physical appearance may constitute a mark and is sufficient to show use.   In *Family Circle, Inc. v. Family Circle Associates, Inc..*, 205 F. Supp. 940 (D.N.J. 1962), two trademarks existed independently for monthly magazines; EVERYWOMAN'S for one publication and FAMILY CIRCLE for the other.   Plaintiff, owner of the EVERYWOMAN'S mark, acquired title to the FAMILY CIRCLE mark by way of merger between the two publications.   The publication called FAMILY CIRCLE ceased to be published and Plaintiff began publishing EVERYWOMAN'S FAMILY CIRCLE, which was also trademarked on its own, but used the words FAMILY CIRCLE prominently with the word EVERYWOMAN'S appearing in much smaller type within the upper crossbar of the 'F' initial letter of 'Family.'



When Plaintiff charged Defendant with infringement of its FAMILY CIRCLE mark, the Defendant asserted counterclaims for cancellation of the mark because when Plaintiff submitted its affidavit for renewal, the specimen showed EVERYWOMAN'S FAMILY CIRCLE and therefore Plaintiff allegedly falsely purported to demonstrate use of the mark FAMILY CIRCLE. Plaintiff moved under Fed. R. Civ. P. 12(b) to dismiss Defendant's cancellation counterclaim, which the court granted.  The court held:

> 'Family Circle' possesses more significance than 'Everywoman's.'  The dominant phrase, 'Family Circle,' is two words; 'Everywoman's' is one.  Moreover, 'Family Circle' is in far larger print than 'Everywoman's.'  The word 'Everywoman's' appears at a minor position in the upper crossbar of the 'F' initial letter of 'Family,' in the title. As a result, one must conclude that it would be very difficult, if not impossible, to read 'Everywoman's' beyond a distance of several feet.  Yet the letters of 'Family Circle' would easily be legible at a far greater distance.  The primary words of the subject trade-mark are 'Family Circle.' The annexation of 'Everywoman's' – in the manner it was attached – merely added a word secondary in significance and in physical appearance.

*Family Circle*, 205 F. Supp. at 943-44.  The court also relied on the following quote for its determination:

> In many instances, the manner in which a mark is used, particularly with respect to manner of display or background, differs from the form in which it was originally registered. In such cases specimens or facsimiles submitted with the affidavit of use therefore differ somewhat from the mark as registered. A liberal policy has been followed in accepting affidavits where the accompanying exhibits indicate that the essential features of the mark are still in use.

Merchant, the Director of Trademark Examining Operations, 49 T.M.Rep. 911.  The court concluded it would be unreasonable to consider the specimen such a departure as to create a brand new unitary meaning with different significance and connotation because the essential features of the mark were still in use.  *Family Circle*, 205 F. Supp. at 944.  As such, the use supported registration and ownership to the trademark FAMILY CIRCLE alone despite its inclusion of the "Everywoman's" mark.

Similarly to *Family Circle*, the REFLECTIONS mark is not unitary with "Center for Skin and Body."   As the record demonstrates, REFLECTIONS has been used on its own (Exh. C (REFLEC-000129)), and the business has been referred to as "Reflections" (Exh. A (Chasin Dep. 39:11-40:1), Exh. D (Brodrick Dep. 34:21-35:1), Exh. B (Chasin Decl. ¶¶ 9, 11, 12)). While REFLECTIONS has been used to a large extent in conjunction with "center for skin and body" it has always appeared in larger font and above "center for skin and body" so as to be clear REFLECTIONS is the mark.   It appears this way on signage, in promotional/marketing materials, and is prominently displayed on the website.  (Exh. B (Chasin Decl. ¶¶ 3-5, 7, 8).)

Plaintiff presents no evidence to show how the average purchaser would encounter the mark under normal marketing of such goods and also what the reaction of the average purchaser would be to the display of the mark as required by the test for a unitary mark as articulated by the Federal Circuit.  *Dena*, 950 F.2d at 1561.  To the contrary, Reflections has demonstrated that the practice is known as "Reflections" — its patients refer to it as "Reflections," the doctors in the practice refers to it as "Reflections," and the phone is answered as "Reflections."   (Exh. B (Chasin Decl. ¶¶ 9-12).)  This precludes a finding of summary judgment as Plaintiff has not shown that REFLECTIONS as used with "Center for Skin and Body" is or should be considered a unitary mark.

> **c.**    **The Specimens Submitted To Show Use Of The Brandywine Registration Supports Use Of The REFLECTIONS Mark**

Furthermore, the Brandywine Registration for "Reflections," which Plaintiff asserts renders the REFLECTIONS mark invalid, has always used generic/descriptive wording beneath its "Reflections" mark.  Indeed, the specimen submitted to the Trademark Office showing use when the Brandywine Registration was procured included such wording.  That specimen was accepted by the Trademark Office as sufficient use of the "Reflections" mark and is as follows:



(Exh. N.)  In February 2016 the Brandywine Registration was renewed and again the specimen provided included generic/descriptive wording beneath the "Reflections" mark — different from the original specimen.  The most recent specimen submitted to the Trademark Office, which was also accepted as showing use of the Brandywine Registration is as follows:



(*Id.*)

Plaintiff cannot both rely on the Brandywine Registration as a valid mark, one that is used in commerce, for purposes of its invalidity argument, and at the same time assert that Reflections' use of its REFLECTIONS mark does not constitute use.  If the specimens for the Brandywine Registration constitute sufficient use, so too do the specimens and use of Reflections' use of its REFLECTIONS mark.

19

**d.    Reflections' Statements About Use To Secure
And Renew Its REFLECTIONS Mark Were Truthful**

Plaintiff's assertion that Reflections falsely claimed that its REFLECTIONS mark was in

use in order to procure its registration should also be summarily dismissed.  As demonstrated

above, the record simply does not support this allegation.  The REFLECTIONS mark was used

since at least 2000 both alone and in combination with wording beneath it.  This unequivocally

constitutes use of the REFLECTIONS mark.  Therefore, summary judgment based on Plaintiff's

assertion that the REFLECTIONS mark is invalid for failure to use the mark or false statements

as to the use of the mark in its procurement, should be denied.

**B.    Laches Is Not Applicable Under The
Circumstances And Does Not Preclude Plaintiff's Claims**

Laches cannot attach to bar Reflections' claims because Reflections asserted its rights to

its REFLECTIONS mark and first notified Plaintiff of its infringement shortly after becoming

aware of the infringement.  There simply was no delay.

Laches only acts as an affirmative defense that precludes a plaintiff from relief when

there is unexplained and inexcusable delay in exercising a right, which results in prejudice to

another party.  *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 804 (3d Cir.

1998); *see also Fox v. Millman*, 210 N.J. 401 (2012).  No such delay exists here.

> Once use becomes infringing, the relevant date for quantifying the 'delay' is when the
> trademark owner either knew or should have known of the existence of a provable claim
> of infringement, and an owner's claim does not ripen until the defendant's infringement
> is sufficiently far-reaching to create a likelihood of confusion.

*Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 855 F.3d 163, 175-76 (3d Cir. 2017).  This

means that once a plaintiff acquires knowledge of potential infringing conduct, a plaintiff must

bring suit within six years.  *N.J. Physicians United Reciprocal Exch. v. Privilege Underwriters,*

*Inc.*, No. 15-6911, 2016 U.S. Dist. LEXIS 143745 (D.N.J. Oct. 18, 2016).

To trigger laches, there must be a delay in filing suit after either actual notice of the infringing activity or constructive notice. *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789 (7th Cir. 2002). Constructive notice occurs when the plaintiff receives some information that would cause a reasonable person to inquire into the situation further. *Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801, 2004 U.S. Dist. LEXIS 14949, at \*10 (D. Del. July 28, 2004); *Johnson v. Standard Mining Co.,* 148 U.S. 360, 370 (1893) ("The law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."). This means a plaintiff does not have a duty to go searching for infringers in a vacuum — the duty to inquire only arises when the plaintiff is "tipped off" that something may be going on. *Allen v. Walker & Gibson*, 235 F. 230, 243 (N.D.N.Y. 1916) ("The owner of a trademark is not chargeable with laches for a failure to prosecute an infringer before he knows or has such notice as would lead an ordinarily prudent person to inquire and learn about the existence of the infringement. It is not his duty to search out and discover it because the presumption is that parties will abide by the law and respect his rights.").

In the present situation, Plaintiff presents no facts of actual notice. Plaintiff purportedly relies on constructive notice by Reflections for its laches argument. However, doing so creates a fact intensive inquiry that precludes summary judgment by itself. For example, Plaintiff recites a litany of facts that it believes support its laches defense. However, none of them establishes that laches applies in this particular instance because Plaintiff has not established that Reflections knew or should have known about Plaintiff's infringement and then delayed enforcement of its REFLECTIONS mark.

Instead, the undisputed facts clearly show that Reflections was completely unaware of Plaintiff until April 2016, and had no reason to know about them until that time.  As Dr. Chasin testified, he only became aware of Plaintiff's existence in "April of '16, roughly."  (Exh. A (Chasin Dep. 113:23-114:2).)  Dr. Chasin also testified that he does not, nor does anyone in his office regularly seek out and search for competitors in the business.  (*Id.* (Chasin Dep. 114:8-125:25).)  Dr. Chasin further testified that his "director of marketing noticed it searching through the — on the internet.  That's how she became aware of it."  (*Id.* (Chasin Dep. 114:5-7).)  However, Reflections' director of marketing only performed such a search because there were patients that made comments to Dr. Chasin about Plaintiff's practice, including inquiring whether it is a new office and questions about different pricing in a separate office.  (Exh. J (Def. Interrog. Resp. No. 3).)  The search was performed shortly after Reflections began hearing such comments from patients.  (*Id.*)  Once Reflections became aware of Plaintiff, without any delay legal counsel was obtained and eventually a cease and desist letter was sent in September 2016.  (Dkt.24-4.)

If anything, these facts establish that Reflections was diligent in its policing efforts.  As soon as Reflections became aware from patients about a cosmetic medical practice in South New Jersey that might be infringing its rights, Reflections investigated, obtained legal counsel, and policed its rights by sending a cease and desist letter.  Regardless of whether Plaintiff existed for a period of time prior to Reflections' knowledge of it, at the very least, there are issues of material fact as to whether Reflections should have known about Plaintiff — and Plaintiff failed to show there are no disputed facts surrounding that issue.  For instance, Plaintiff asserts that Dr. Patel, attended multiple plastic surgery and cosmetic surgery conferences [and marketing and educational meetings by various vendors], but fails to explain the relevance and how or why

22

Reflections should have known about Plaintiff as a result of Dr. Patel's mere attendance at those events.

Plaintiff also appears to insinuate that Reflections should have known about Plaintiff because of its highly ranked Internet search results.  However, when Dr. Chasin was asked about Plaintiff's purported "high ranking" on search sites prior to April 2016 he testified as follows:

> I would have -- in my opinion, which is just an opinion, I think they are -- they have most likely ramped up their efforts, used different companies.  I don't know what they did.  But it seems that their -- their exposure on the internet has increased.  So -- and good for them.  Investing in that and they are learning new tactics or doing new things, good for them.  But my feeling is that's why we are now noticing this problem, that it's probably from those efforts are becoming fruitful.  Which is great for them, but it's caused confusion.

(Exh. A (Chasin Dep. 118:19-119:6).)

The facts unequivocally support Dr. Chasin's belief.  Dr. Patel testified that he utilized a service called LookingYourBest.com beginning in 2007 until 2014 or 2015 to perform website production and maintenance services.  (Exh. O (Patel Dep. 86:21-87:9).)  When Plaintiff stopped working with LookingYourBest.com, Plaintiff began working with Precision Digital Marketing that also did website design, but in addition did marketing.  (*Id.* (Patel Dep. 87:10-25).)  It was around that same time when Plaintiff changed to Precision Digital Marketing that it increased its social media presence.  (*Id.* (Patel Dep. 90:4-10).)  Plaintiff also began targeting Internet searches in the Freehold area and in the State of New Jersey.  (*Id.* (Patel Dep. 94:6-95-1).)  Around that same time in 2015 Precision Digital Marketing also redesigned Plaintiff's website.  (*Id.* (Patel Dep. 98:16-99:2).)  And even more recently, Plaintiff replaced Precision Digital Marketing to begin working with Incredible Marketing to continue to increase advertising and social media presences.  (*Id.* (Patel Dep. 100:24-101:24).)  Accordingly, even though Plaintiff may have had a presence on the Internet since around 2007 when it first established its website, it

was not until Plaintiff invested heavily in new forms of online marketing in 2015 and 2016, that Reflections first became aware of Plaintiff.

Moreover, Plaintiff testified that it first became aware of Reflections when it received a phone call from Reflections about the infringement in 2016.  (Exh. P (Pl.'s Resp. to Interrog. No. 6), Exh. O (Patel Dep. 56:1-8).)  The record establishes that both parties became aware of each other around the same time in 2016.  It is therefore unreasonable for Plaintiff to claim that Reflections should have been unaware of Plaintiff prior to April 2016, earlier than when Plaintiff finally became aware.  That is, if Plaintiff was unaware of Reflections, which is a larger practice consisting of two offices and expends much more in advertising and marketing, it is unreasonable to conclude that Reflections should have been aware of Plaintiff, a much smaller practice with a small advertising budget, at a much earlier time — a sure double standard.  In fact, Plaintiff could have learned about Reflections much sooner if Dr. Patel had not chosen to forgo a simple trademark and business name search.  (Exh. O (Patel Dep. 24:1-25).)  Plaintiff cannot turn a blind eye to its own infringement and at the same time assert that Reflections looked the other way when it came time to policing its mark against Plaintiff.

Plaintiff's cases on which it relies for its laches argument do not support its position. Plaintiff primarily relies upon *Commerce National Insurance Services v. Commerce Insurance Agency, Inc.*, 995 F. Supp. 490, 502 (D.N.J. 1998) to assert that Reflections had constructive notice because Plaintiff used its mark "openly and notoriously."  But in *Commerce*, unlike the situation at bar, there was ongoing contact between the plaintiff and the defendant through banking, and a working relationship between managerial staff and officers of each company — the companies "dealt frequently with" one another.  *Id*.  And in *Mego Corp. v. Mattel, Inc.*, 203 U.S.P.Q. 377 (S.D.N.Y. 1978), that case was specifically directed to denial of a

24

preliminary injunction, which carries a much lower standard for laches.  *Commerce*, 995 F. Supp. at 490.  Accordingly, Plaintiff's argument lacks any support from case law.

As to prejudice, Plaintiff cannot assert any because they have failed to show Reflections had knowledge about Plaintiff and sat on its rights.  Plaintiff chose to proceed with its name without a simple trademark and/or business name search for the REFLECTIONS mark, which could have prevented this entire dispute.  Plaintiff chose to forgo that search because Plaintiff incorrectly believed, without seeking any legal advice, that Reflections was generic.  (Exh. O (Patel Dep. 24:1-25).)  And as established by the facts presented, both Plaintiff and Reflections were unaware of each other until roughly the same time in April 2016.  Such lack of knowledge by both parties cannot be said to have created a sense of security by Plaintiff regarding its use of the mark.  Accordingly, as the facts establish, there has been no delay in Reflections asserting its trademark rights and Plaintiff is unable to claim any prejudice.

## V.    CONCLUSION

For the foregoing reasons, Reflections respectfully requests that the Court deny Plaintiff's motion for summary judgment.

Respectfully submitted,

LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
*Attorneys for Defendant Reflections*
*Center for Skin and Body, PC*

Dated: June 4, 2018                    By:     s/  Aaron S. Eckenthal
                                                Aaron S. Eckenthal
                                                Tel:     908.654.5000
                                                E-mail:aeckenthal@lernerdavid.com
                                                        litigation@lernerdavid.com