*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEW REFLECTIONS PLASTIC SURGERY, LLC, | : : : : | |
| Plaintiff, | : : | Civil Action No. 16-8523 (FLW) (TJB) |
| v. | : : | |
|  | : | **OPINION** |
| REFLECTIONS CENTER FOR SKIN AND BODY, PC, | : : : | |
| Defendant. | : : | |

**WOLFSON, United States District Judge:**

Pending before the Court is a motion for summary judgment from Plaintiff New Reflections Plastic Surgery, LLC ("Plaintiff"), seeking a declaratory judgment under 28 U.S.C. §§ 2201, *et seq.*, that Defendant Reflections Center for Skin and Body, PC's ("Defendant") REFLECTIONS trademark is invalid/unenforceable and Plaintiff's use of its NEW REFLECTIONS PLASTIC SURGERY mark does not constitute trademark infringement, unfair competition, or false designation of origin under the Lanham Act and applicable state laws. For the reasons that follow, Plaintiff's motion for summary judgment is denied.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a cosmetic surgery practice located in Freehold, New Jersey, operating under the name "New Reflections Plastic Surgery LLC." Plaintiff's Statement of Material Facts Not in Dispute ("PSOF") at ¶¶ 1-2. Owner Dr. Nikesh Patel founded the practice in August 2007, and its services include comprehensive invasive and noninvasive cosmetic procedures for the face,

1

breast, and body, including breast augmentation, thigh and arm lifts, rhinoplasty, face lifts, and ab sculpting. *Id.* When attending conferences and interacting with local physicians, businesses, and potential partners, Dr. Patel always refers to his practice as New Reflections Plastic Surgery. *Id.* at ¶ 38-39. Plaintiff advertises and markets its services and medical procedures on the internet to prospective patients nationally, and has operated its website, www.newreflectionsps.com, continuously since at least September 2007. *Id.* at ¶¶ 3-4. The website is highly ranked on various search terms, including "new jersey plastic surgeon," "plastic surgery new jersey," and "New Reflections Plastic Surgery." *Id.* at ¶ 7. Plaintiff has also purchased online local and regional newspaper and magazine advertisements. *Id.* at ¶ 8.

Defendant is a cosmetic medicine practice, with multiple locations in New Jersey, that provides services including laser treatments for acne, rejuvenation, scars, tattoo removal, facials, and massage services. *Id.* at ¶ 11; Defendant's Supplemental Statement of Disputed Material Facts ("DSOF") at ¶¶ 1, 7. Defendant opened in the year 2000, as part of a medical practice called "Priority Medical Care," both of which were co-owned by Dr. Mitchell Chasin. PSOF at ¶¶ 12-14. On November 16, 2001, Priority Medical Care obtained New Jersey trademark registration for the mark "REFLECTIONS." *Id.* at ¶ 14. According to the registration, the first use of the mark was December 1, 2000. *Id.* at ¶ 15. Although the registration was for "REFLECTIONS" only, Defendant operated under the full name "Reflections Center for Skin and Body," using the following logo on its signage, marketing materials, website, and business cards:



DSOF at ¶ 4.

Defendant eventually opened a second location in Livingston, New Jersey and continued using the same logo. *Id.* at ¶ 7. Although there is some dispute as to the exact date this occurred, by 2011, Priority Medical Care had assigned the "REFLECTIONS" mark registration to the Livingston practice, which operated under the name "Reflections of Livingston." PSOF at ¶ 16. According to Defendant, despite the "Reflections Center for Skin and Body" and "Reflections of Livingston" names, Defendant and its patients used "Reflections" on its own to refer to the practice. DSOF at ¶ 3. On November 3, 2016, Defendant filed in New Jersey an Application to Renew a Registered Trade or Service Mark for the "REFLECTIONS" mark. PSOF at ¶ 17. Recently, Reflections Center for Skin and Body changed its name to "Reflections the Center for Cosmetic Medicine," and the logo appears as follows:



DSOF at ¶ 5.

In addition to the New Jersey registration for "REFLECTIONS," Defendant applied for federal registration of the mark "REFLECTIONS CENTER FOR SKIN & BODY" on October 4, 2008, asserting a first-use date of December 10, 2004, PSOF at ¶¶ 28-29; Dr. Chasin testified that a former office manager submitted this trademark application without his authorization. DSOF at ¶ 10. Following a series of correspondences with Defendant, the USPTO issued a Final Office Action on March 6, 2009, explaining that it rejected the proposed trademark "based on a likelihood of confusion," with other existing marks. PSOF at ¶ 31. On September 7, 2009, Defendant abandoned its federal trademark registration application. *Id.* at ¶ 32.

Plaintiff also alleges that the REFLECTIONS mark has been registered with the USPTO by third parties. *Id* at ¶ 25. For instance, on October 31, 2006, Brandywine Senior Care, Inc., a medical and health care business located in the state of New Jersey, was granted a federal trademark for its REFLECTIONS mark, which mark, according to the registration, had been used in commerce since May 1, 2000. *Id* at ¶ 26.

Dr. Chasin first became aware of Plaintiff in April 2016, after patients began making inquiries about whether Defendant had opened a new office that had a different pricing structure. Declaration of Aaron S. Eckenthal, Exh. J at 8. Shortly thereafter, Defendant's director of marketing conducted an internet search and discovered Plaintiff's practice. PSOF at ¶ 36; DSOF at ¶ 20. Dr. Chasin has no recollection of entering "Reflections" and searching for Defendant's name on Google or any other search engine prior to April 2016, and he "never asked someone to search for [Defendant's] name" or for "Reflections" or "Reflections Center for Skin and Body." PSOF at ¶ 37. After calling Plaintiff regarding its use of the mark, Defendant sent a cease-and-desist letter on September 12, 2016, stating that Plaintiff's use of REFLECTIONS constitutes infringement and unfair competition, and demanding that Plaintiff "immediately and permanently cease and desist any and all use of the infringing REFLECTIONS trademark and/or any confusingly similar variations [on its] website or anywhere else." PSOF at ¶ 34. Defendant's letter threatened that if Plaintiff did not act, Defendant would be forced to "consider any and all legal remedies." *Id.*

On November 11, 2016, Plaintiff filed this action, seeking a declaratory judgment under 28 U.S.C. §§ 2201, *et seq.*, that Defendant's REFLECTIONS mark is invalid/unenforceable and Plaintiff's use of its NEW REFLECTIONS PLASTIC SURGERY mark does not constitute trademark infringement, unfair competition, or false designation of origin under the Lanham Act,

4

and applicable state laws. On December 7, 2016, Defendant answered the Complaint and asserted counterclaims for unfair competition and trademark infringement under federal and state laws. On May 10, 2018, Plaintiff moved for summary judgment on all counts in its Complaint.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson,* 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson,* 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex,* 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."

5

*Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson,* plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotations omitted); *see also Matsushita,* 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir.1992).

## III. DISCUSSION

Plaintiff argues that Defendant's "REFLECTIONS" mark is invalid and, therefore, cannot be the basis for a trademark infringement suit.[1] To make this showing, Plaintiff must undermine at least one of the elements of Defendants' potential affirmative trademark

---

[1] As an initial matter, a justiciable case and controversy exists for Plaintiff to bring a declaratory judgment action because Defendant sent Plaintiff a cease-and-desist letter explicitly threatening legal action. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

infringement claim. Under both the Lanham Act and New Jersey trademark law, the party asserting infringement must show, (1) that it owns its mark; (2) that its mark is valid and legally protectable; and (3) that the infringing party's "use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services." *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,* 214 F.3d 432, 437 (3d Cir. 2000). Plaintiff seeks a declaratory judgment of non-infringement under both federal and New Jersey law, but the analysis for trademark and unfair competition claims under New Jersey law is the same as the analysis under its federal counterpart. *Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.,* 696 F. Supp. 140, 143 (D.N.J. 1988); *see also J & J Snack Foods, Corp. v. Earthgrains Co.,* 220 F. Supp. 2d 358, 374 (D.N.J. 2002).

Here, although Plaintiff purports to attack the second element of Defendant's potential trademark infringement claim—that Defendant's marks are not valid and legally protectable—none of its arguments fit squarely within the doctrinal framework through which a party can contest the validity of a mark. Indeed, in determining whether a mark is legally protectable, courts use a hierarchy of mark classifications: (1) generic marks; (2) descriptive marks; (3) suggestive marks; and (4) arbitrary or fanciful marks. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 221 (3d Cir. 2000). In order to be protectable, "a mark must either be suggestive, arbitrary, or fanciful, or must be descriptive with a demonstration of secondary meaning*." Id.* at 222. But, Plaintiff does not contend that Defendant's "REFLECTIONS" mark is not protectable because it is generic or descriptive and lacking secondary meaning. Instead, Plaintiff argues that Defendant's mark is invalid because 1) it creates a likelihood of confusion with other, third-party marks; 2) Defendant never actually used the mark in commerce; 3) Defendant committed fraud on the PTO in attempting to obtain registration; and 4) the defense of

laches bars Defendant from asserting a trademark infringement claim. I turn to each of these arguments.

### A. Likelihood of Confusion with Third-Party Marks

Plaintiff contends that Defendant's mark is invalid because it potentially violates the rights of existing third-party marks that have priority over Defendant's mark. As Plaintiff puts it, "the undisputed facts show that the REFLECTIONS mark has been registered with the USPTO by third parties and used in New Jersey in connection with services related to those of Defendant that claim priority over Defendant's alleged rights." ECF No. 24 at 5. Specifically, Plaintiff argues that there is a likelihood of confusion between Defendant's mark and Brandywine's "REFLECTIONS" mark, and Brandywine has priority because its asserted first use of the mark was May 1, 2000, prior to Defendant's purported first use of December, 2000.

While styled as an attack on the validity of Defendant's mark, Plaintiff's argument appears to be a textbook *jus tertii* defense. The *jus tertii* defense typically arises when a defendant in a trademark infringement action challenges the plaintiff's mark "because plaintiff itself is an infringer of a third party with rights allegedly superior to plaintiff." 6 *McCarthy on Trademarks and Unfair Competition* § 31.157 (5th ed.). Because this is a declaratory judgment action in which Plaintiff seeks a declaration that its mark is *not* infringing on Defendant's mark, the normal roles are reversed, and it is Plaintiff, not Defendant, who is asserting the defense.

The *just tertii* defense has fallen into disfavor as a defense to trademark infringement in modern times. In fact, courts that have dealt with the issue within the past century have roundly held that "[*j*]*us tertii…*should not be allowed as a defense in any trademark case." *Eagle Snacks, Inc. v. Nabisco Brands, Inc.,* 625 F.Supp. 571, 578 (D.N.J. 1985) (quoting 2 *McCarthy on Trademark and Unfair Competition,* 675 (1974)); *Capetola v. Orlando*, 426 F. Supp. 616, 617–

18 (E.D. Pa. 1977) (citing *Gilmore v. Utah*, 429 U.S. 1012 (1976) (Burger, C. J. concurring)) (noting "the general prohibition against the assertion of jus tertii as a defense" in trademark cases); *Marshak v. Sheppard*, 666 F. Supp. 590, 599 (S.D.N.Y. 1987) (same); 6 *McCarthy on Trademarks and Unfair Competition* § 31:160 (5th ed.) ("Modern decisions have rejected a *jus tertii* defense in trademark litigation").[2]

The reason that courts disfavor the *jus tertii* defense is because it risks expanding a limited two-party suit into a much broader conflict:

> As a matter of policy, *jus tertii* should not be allowed as a defense in any trademark case. *So long as plaintiff proves rights superior to defendant, that is enough.* Defendant is no less an infringer because it is brought to account by a plaintiff whose right may or may not be superior to the whole world. The plaintiff's speculative dispute with a third party does not concern the defendant.

*Eagle Snacks*, 625 F. Supp. at 578–79 (emphasis in original). Clearly, this policy rationale is applicable here because Plaintiff, in arguing that Defendant has infringed on third-party marks, seeks to bring Brandywine and other, unnamed third-parties into its dispute with Defendant. But whether Defendant infringed on these marks does not impact Plaintiff's burden of proof on infringement in this case. That dispute, if it exists, is solely between Defendant and Brandywine or the other, unnamed "REFLECTIONS" trademark holders. Further, even were the *jus tertii* defense permissible, Plaintiff has provided very little evidence as to why confusion is likely to exist between Defendant's mark and Brandywine's, aside from asserting that both marks create the same overall impression and both businesses offer medical and beauty services. However, the Court cannot find a mark invalid simply due to a likelihood of confusion without "a

---

[2] There is one context in which courts have allowed the *jus tertii* defense: "only if defendant can prove privity with the third party would defendant be able to claim some entitlement to the priority rights of that third party." *United Food Imports, Inc. v. Baroody Imports, Inc.*, No. 09 2835, 2010 WL 1382342, at *6 (D.N.J. Apr. 6, 2010) (citing *McCarthy,* § 31:160). Here, as Plaintiff does not assert privity with Brandywine, this exception is inapplicable.

9

comprehensive evaluation of a variety of factors," a showing that Plaintiff has not attempted to make. *Edison Elec. Co. v. Edison Contracting Co.*, 203 N.J. Super. 50, 52 (Ch. Div. 1985) (noting in that in New Jersey "no case has enjoined use of a trade name simply upon a showing that defendants mark was similar to the trade name of a prior user or that there was actual or potential confusion between the names"); *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir. 1983) (listing ten factors for courts to consider when undertaking likelihood of confusion analysis).

Thus, the Court cannot grant summary judgment to Plaintiff on the basis of any potential confusion between Defendant's mark and third-party marks.

### B. Non-Use/Fraud on the PTO

Plaintiff next argues that Defendant's "REFLECTIONS" mark is unenforceable because Defendant never used the mark in commerce. "With respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991) (internal citations omitted). That is, "actual and continuous use is required to acquire and retain a protectible interest in a mark." *Id.* (quoting *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018, 1022–23 (11th Cir.1989)); *see also Hydro Dynamics, Inc. v. George Putnam & Co., Inc.,* 811 F.2d 1470, 1473 (Fed. Cir. 1987) ("[T]rademark rights in the United States are acquired by ... adoption and use, not by registration"); *Kohler Mfg. v. Beeshore,* 59 F. 572, 576 (3d Cir. 1893) (there must be an intention "to adopt [the mark] as a trademark"); *Caesar's World, Inc. v. Caesar's Palace,* 490 F.Supp. 818, 822 (D.N.J. 1980) ("Common law rights are acquired in a ... mark by adopting and using the mark....").

Here, Plaintiff does not dispute that Defendant has operated its practice with "Reflections" in the title since 2000. Rather, Plaintiff contends that Defendant has always used "Reflections" in conjunction with "Center for Skin and Body" as a single, unitary mark and, hence, cannot claim ownership of the "REFLECTIONS" mark by itself. However, as Defendant correctly points out, in order for this argument to succeed, the entire "REFLECTIONS CENTER FOR SKIN AND BODY" mark must meet the test for unitariness, which asks whether the elements of a mark are so integrated or merged together that they cannot be regarded as separable. *See In re EBS Data Processing*, 212 U.S.P.Q. 964, 966 (T.T.A.B. 1981); *In re Kraft, Inc.*, 218 U.S.P.Q. 571, 573 (T.T.A.B. 1983). The inquiry focuses on "how the average purchaser would encounter the mark under normal marketing of such goods and also . . . what the reaction of the average purchaser would be to this display of the mark." *Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 1561 (Fed. Cir. 1991) (quoting *In re Magic Muffler Serv., Inc.*, 184 U.S.P.Q. 125, 126 (T.T.A.B. 1974)). The issue of whether a mark is unitary is a question of fact, not an issue of law. *In re Slokevage*, 441 F.3d 957, 960 (Fed. Cir. 2006).

Here, genuine issues of material fact exist concerning whether "REFLECTIONS CENTER FOR SKIN AND BODY" is a unitary mark. In support of its argument, Plaintiff merely relies on the fact that "Reflections Center for Skin and Body," not "Reflections," appears on Defendant's signage and marketing materials, and that Defendant unsuccessfully applied for federal registration of the mark "REFLECTIONS CENTER FOR SKIN & BODY." However, Defendant has presented sufficient evidence to create a fact issue as to whether an average consumer would view "Reflections" as separable from "Center for Skin and Body." Based on appearance alone, the word "Reflections" on the logo appears in much larger letters with the "TM" symbol next to it, and, thus, it stands out separately and apart from "Center for Skin &

Body." From this visual arrangement, the average consumer could view the mark's component parts as separable. *See Family Circle, Inc. v. Family Circle Assocs., Inc.*, 205 F. Supp. 940, 943–44 (D.N.J. 1962), *aff'd*, 332 F.2d 534 (3d Cir. 1964) (finding that publication called EVERYWOMAN'S FAMILY CIRCLE that used the words FAMILY CIRCLE prominently with the word EVERYWOMAN'S appearing in much smaller type was not a unitary mark, as "Family Circle' possesses more significance than 'Everywoman's"). Moreover, Defendant also contends that patients associate Defendant's practice with "Reflections," as Dr. Chasin testified that patients refer to the practice by that name. These factual disputes about how the average consumer views the mark make summary judgment on the issue of non-use inappropriate.[3]

## C. Laches

Finally, Plaintiff moves for summary judgment, arguing that the defense of laches bars any potential infringement claim against it.[4] The doctrine of laches acts to bar a trademark infringement claim when there is "(1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay." *Santana Prods. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005). "Inexcusable delay" for purposes of laches is measured by looking to "the most analogous" state statute of limitations, which, in the case of trademark infringement, is New Jersey's six-year fraud statute. *D'Agostino v. Appliances Buy Phone, Inc.*, 633 Fed. Appx.

---

[3] Plaintiff also argues that Defendant committed fraud on the PTO in its federal registration application, as the application erroneously claimed that Defendant had used the "REFLECTIONS" mark in commerce. However, because factual disputes exist regarding Defendant's use of the of the mark, summary judgment on this issue is also inappropriate.

[4] Declaratory judgments are equitable in nature and thus the doctrine of laches applies. *Fenton v. Balick*, 821 F. Supp. 2d 755, 762 (E.D. Pa. 2011); *Green v. Mansour*, 474 U.S. 64, 72 (1985) ("The propriety of issuing a declaratory judgment may depend upon equitable considerations . . . ."); *see Algrant v. Evergreen Valley Nurseries Ltd. Pshp.*, 126 F.3d 178, 186 n.3 (3d Cir. 1997).

88, 91 n.3 (3d Cir. 2015); *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 379 (D.N.J. 2012); *Zinn v. Seruga*, No. 05-372, 2009 WL 6044806 (D.N.J. Sep. 28, 2009).

Importantly, the statute of limitations begins to run at the time "the right to institute and maintain the suit arises." *Beauty Time, Inc. v. VU Skin Sys.*, 118 F.3d 140, 144 (3d Cir. 1997) (citations and quotations omitted). In other words, "aggrieved parties must ... bring their claim within [the applicable statute of limitations] when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." *Id.* at 148; *see also Medical Prods Labs. v. Premier Dental Prods. Co.*, No. 12-6051, 2013 WL 395493, at *3 (E.D. Pa. Feb. 1, 2013); *Kelly v. Estate of Arnone*, No. 08-6046, 2009 WL 2392108, at *7 (D.N.J. Aug. 3, 2009) (finding that the statute of limitations began to run when the trademark was registered because the plaintiff had constructive notice that the mark existed at that time). The "should have known" date, sometimes referred to as the "constructive notice" date, occurs when the plaintiff receives some information that would cause a reasonable person to inquire into the situation further. *Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801, 2004 WL 1770290, at *3 (D. Del. July 28, 2004) (citing *Johnston v. Standard Min. Co.,* 148 U.S. 360, 370 (1893)).

Here, Plaintiffs' laches argument is inappropriate for summary judgement because genuine factual disputes exist regarding when Defendant should have known about Plaintiff's practice. Plaintiff contends that Defendant was on constructive notice as early as 2007, as Plaintiff has, since then, operated a website that appears highly in search results, has advertised in newspapers and magazines, and Dr. Patel refers to his practice as New Reflections Plastic Surgery when speaking at public events or interacting with others. However, these general publicity efforts do not demonstrate that, prior to 2016, Defendant ever received any information that should have caused it to inquire into Plaintiff's potential infringement. Rather, Defendant

contends that patients made comments around April 2016 that prompted Defendant to run internet searches, and, shortly thereafter, to contact Plaintiff and send a cease-and-desist letter. Plaintiff has presented no case law granting summary judgment on a laches defense in a similar context, and, in fact, as the issue of notice is a factual one, cases granting summary judgment on laches defenses are few and far between. *See, e.g., ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 504 (D. Del. 2016) (denying summary judgment on laches defense because of genuine factual disputes about when Defendant "knew or reasonably should have known of its claim" which, "by itself, precludes a grant of summary judgment."). Thus, summary judgment on Plaintiff's laches defense is unwarranted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgement is **DENIED**.

Dated: December 20, 2018    /s/ Freda L. Wolfson
                            Hon. Freda L. Wolfson
                            United States District Judge